## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **LYNNE SEABROOKE,** | |
| **Plaintiff,** | **No. C10-2028** |
| **vs.** | **FINAL JURY INSTRUCTIONS** |
| **UPPER IOWA UNIVERSITY,** | |
| **Defendant.** | |

## FINAL INSTRUCTION NO. __1__

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because all are important. This is true even though some of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be.

## FINAL INSTRUCTION NO. __2__

The fact that Upper Iowa University is a corporation should not affect your decision. All persons are equal before the law, and corporations, whether large or small, are entitled to the same fair and conscientious consideration by you as any other person.

Since a corporation can act only through its officers, employees, or other agents, any act of an officer, employee, or other agent of Upper Iowa, in the performance of that person's duties, is held in law to be an act of Upper Iowa.

## FINAL INSTRUCTION NO. __3__

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claims rely upon that fact. The party who has the burden of proving a fact must prove it by the greater weight or preponderance of the evidence. To prove something by the greater weight or preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.

In some instances, you will be instructed that a fact must be proven by "clear, convincing, and satisfactory" evidence. Evidence is clear, convincing, and satisfactory if there is no serious or substantial uncertainty about the conclusion to be drawn from it.

The greater weight or preponderance of the evidence, or whether a fact has been proven by clear and convincing evidence, is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

# FINAL INSTRUCTION NO. __4__

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness' intelligence, the opportunity a witness had to see or hear the things testified about, a witness' memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

## FINAL INSTRUCTION NO. __5__

You have heard testimony from persons described as experts. Persons who have become experts in a field because of their education and experience may give their opinion on matters in that field and the reasons for their opinion.

Consider expert testimony just like any other testimony. You may accept it or reject it. You may give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

An expert witness was asked to assume certain facts were true and to give an opinion based on that assumption. This is called a hypothetical question. If any fact assumed in the question has not been proved by the evidence, you should decide if that omission affects the value of the opinion.

# FINAL INSTRUCTION NO. __5A__

You have heard testimony about the Family Medical Leave Act, also known as the FMLA. The FMLA permits employees, under certain circumstances, to take time off work for a "serious health condition." Seabrooke argues that by suggesting Seabrooke take FMLA leave, Upper Iowa acknowledged that Seabrooke had a serious health condition. You may accept or reject the argument. You may consider this evidence for the limited purpose of determining whether Upper Iowa knew of Seabrooke's mental impairments. You should not concern yourself with how the FMLA may or may not have applied to Seabrooke's circumstances.

## FINAL INSTRUCTION NO. __6__

Regarding her reasonable accommodation claim, Seabrooke must prove all of the following propositions:

1.  Seabrooke had mental impairments of depression, anxiety, and/or post-traumatic stress disorder; and

2.  Seabrooke's mental impairments substantially limited Seabrooke's ability to work or perform another major life activity; and

3.  Upper Iowa knew of Seabrooke's mental impairments; and

4.  Seabrooke could have performed the essential functions of an International Enrollment Advisor at the time Upper Iowa discharged Seabrooke if Seabrooke had been provided with an accommodation; and

5.  Providing the accommodation would have been reasonable; and

6.  Upper Iowa failed to provide the accommodation.

If Seabrooke has failed to prove any of these propositions, then your verdict must be for Upper Iowa and Seabrooke is not entitled to damages on this claim. If Seabrooke has proved all of these propositions, then Seabrooke is entitled to damages in some amount.

## FINAL INSTRUCTION NO. __7__

The law provides that damages may not be awarded on a claim of failure to provide a reasonable accommodation if the employer demonstrates good faith efforts, in consultation with the employee, to identify and make a reasonable accommodation.

If you find in favor of Seabrooke on her reasonable accommodation claim, as described in Instruction No. 6, then you must answer the following question in the verdict form:  Did Upper Iowa prove by the greater weight or preponderance of the evidence that it made a good faith effort and consulted with Seabrooke to identify and make a reasonable accommodation?

# FINAL INSTRUCTION NO. __8__

Regarding her claim of disability discrimination, Seabrooke must prove all of the following propositions:

1.   Seabrooke had mental impairments of depression, anxiety, and/or post-traumatic stress disorder; and

2.   Seabrooke's mental impairments substantially limited Seabrooke's ability to work or perform another major life activity; and

3.   Upper Iowa discharged Seabrooke; and

4.   Seabrooke could have performed the essential functions of an International Enrollment Advisor at the time Upper Iowa discharged Seabrooke; and

5.   Upper Iowa knew of Seabrooke's mental impairments and those impairments were a motivating factor in Upper Iowa's decision to discharge Seabrooke.

If Seabrooke has failed to prove any of these propositions, then your verdict must be for Upper Iowa and Seabrooke is not entitled to damages on this claim.  If Seabrooke has proved all of these propositions, then Seabrooke is entitled to damages in some amount.

## FINAL INSTRUCTION NO.  9

The law provides that damages may not be awarded on a claim of disability discrimination if the employer demonstrates that it would have taken the same action in the absence of the impermissible motivating factor.   An employer may hold disabled employees to the same standard of conduct as all other employees.

If you find in favor of Seabrooke on her claim of disability discrimination, as described in Instruction No. 8, then you must answer the following question in the verdict form: Did Upper Iowa prove by the greater weight or preponderance of the evidence that it would have discharged Seabrooke even if it had not considered Seabrooke's mental impairments?

## FINAL INSTRUCTION NO. __10__

    **Regarding element No. 2 of Instruction No. 6 and Instruction No. 8,** in determining whether Seabrooke's mental impairments "substantially limit" her ability to work or perform another major life activity, you should compare Seabrooke's ability to perform those activities with that of an average person.  In doing so, you should also consider:  (1) the nature and severity of the mental impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact of the impairment.

    A person is substantially limited in working if she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.  The factors to be considered include:  the number and type of jobs from which the impaired individual is disqualified; the geographical area to which the individual has reasonable access; and the individual's job training, experience, and expectations.

    An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

    The determination of whether an impairment substantially limits a major life activity must be made without regard to the ameliorative effects of mitigating measures such as medication, use of assistive technology, or other reasonable accommodations.

    It is not the name of an impairment or a condition that matters, but rather the effect of an impairment or condition on the life of a particular person.  The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis.

## FINAL INSTRUCTION NO. __11__

Regarding element No. 2 of Instruction No. 6 and Instruction No. 8, "major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

## FINAL INSTRUCTION NO. __12__

**Regarding element No. 4 of Instruction No. 6 and Instruction No. 8,** in determining whether a job function is "essential," you should consider the following factors: (1) Upper Iowa's judgment as to which functions of the job are essential; (2) written job descriptions; (3) the amount of time spent on the job performing the function in question; (4) consequences of not requiring the person to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of persons who have held the job; (7) the current work experience of persons in similar jobs; (8) whether the reason the position exists is to perform the function; (9) whether there are a limited number of employees available among whom the performance of the function can be distributed; and (10) whether the function is highly specialized and the individual in the position was hired for her expertise or ability to perform the function.

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.

The term "essential functions" means the fundamental job duties of the employment position the plaintiff holds or for which the plaintiff has applied. The term "essential functions" does not include the marginal functions of the position.

# FINAL INSTRUCTION NO. __13__

**Regarding element Nos. 4 and 5 of Instruction No. 6 and element No. 4 of Instruction No. 8**, the term "accommodation" means making modifications or adjustments to the work environment, or to the manner or circumstances under which a job is customarily performed, that allow a person with a disability to perform the essential functions of the job.

A "reasonable accommodation" may include, but is not limited to:  making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring; part-time or modified schedules; reassignment to a vacant position; acquisition or modification of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or polities; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

Although the modifications described above may be considered reasonable accommodations, this does not mean an employer is required to offer those accommodations in every case.  For example, although job restructuring is a possible accommodation, an employer is not required to reallocate the essential functions of the job, or hire additional employees, or reassign existing workers to assist a disabled employee, if it is not reasonable to do so.  There is no precise test for determining what constitutes a reasonable accommodation; it will depend on the facts in each case.

An employer is not necessarily required to provide the accommodation requested or preferred by the employee.  The employer need only provide some "reasonable" accommodation.

FINAL INSTRUCTION NO.   14

**Regarding element No. 5 of Instruction No. 8,** the term "motivating factor" means a reason, alone or with other reasons, on which Upper Iowa relied when it discharged Seabrooke or which moved Upper Iowa toward its decision to discharge Seabrooke.

## FINAL INSTRUCTION NO. __15__

If you find that Seabrooke is entitled to damages on either claim, then you must award her such sum as you find will fairly and justly compensate her for any damages you find Seabrooke sustained as a direct result of Upper Iowa's wrongful conduct.

Seabrooke's claim for damages includes two distinct types of damages: lost past earnings, benefits, and medical bills; and emotional distress damages. You must consider each of these kinds of damages separately.

In considering Seabrooke's lost past earnings and benefits, you must determine the amount of any wages and fringe benefits Seabrooke would have earned in her employment with Upper Iowa if she had not been discharged on February 26, 2009, through the date of your verdict, *minus* the amount of earnings and benefits that Seabrooke received from other employment during that time. In considering medical bills, you must determine the medical bills incurred as a result of Upper Iowa's wrongful conduct.

In considering emotional distress damages, you must determine the amount of damages that will reasonably compensate Seabrooke for the emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life that were caused by Upper Iowa's wrongful conduct. Seabrooke seeks two separate items of emotional distress damages: (1) emotional distress caused by Upper Iowa's failure to provide reasonable accommodations; and (2) emotional distress caused by her termination from employment. Do not allow any amount awarded for one item of emotional distress damages to be included in any amount awarded for the other item of emotional distress damages. The amount, if any, that you assess for damages for emotional distress cannot be measured by an exact or mathematical standard, and Seabrooke is not required to introduce evidence of monetary value of such damages. However, you must use your sound judgment, based upon an impartial consideration of the evidence, to determine the amount of such damages.

(CONTINUED...)

**FINAL INSTRUCTION NO. __15__ (Cont'd)**

Seabrooke has a duty under the law to "mitigate" her damages – that is, to exercise reasonable diligence under the circumstances to minimize her damages. Therefore, if it has been proved that Seabrooke failed to seek out or take advantage of an opportunity that was reasonably available to her, then you must reduce her damages by the amount she reasonably could have avoided if she had sought out or taken advantage of such an opportunity.

Remember, throughout your deliberations, you must not engage in any speculation, guess or conjecture; and you must not award damages under this Instruction by way of punishment or through sympathy.

If you find in favor of Seabrooke on one or both of her claims, but you do not find her damages have monetary value, then you must return a verdict on that claim for Seabrooke in the nominal amount of One Dollar ($1.00).

**FINAL INSTRUCTION NO.   16**

In addition to the compensatory damages mentioned in Instruction No. 15, the law permits the jury under certain circumstances to award punitive damages.

If you find in favor of Seabrooke on her reasonable accommodation claim and/or her disability discrimination claim, then you must decide whether Upper Iowa acted with malice or reckless indifference to Seabrooke's right to a reasonable accommodation, or her right not to be discriminated against on the basis of a disability.   Upper Iowa acted with malice or reckless indifference if it has been proved that Upper Iowa knew that its failure to reasonably accommodate Seabrooke, or its discharge of Seabrooke, was in violation of the law prohibiting disability discrimination, or that it acted with reckless disregard of that law.   However, you may not award punitive damages if it has been proved that Upper Iowa made a good-faith effort to comply with the law in this regard.

If it has been proved that Upper Iowa acted with malice or reckless indifference to Seabrooke's rights, and did not make a good faith effort to comply with the law, then, in addition to any other damages to which you find Seabrooke entitled, you may, but are not required to, award Seabrooke an additional amount as punitive damages for the purposes of punishing Upper Iowa for engaging in such misconduct and deterring Upper Iowa and others from engaging in such misconduct in the future.   You should presume that Seabrooke has been made whole for her injuries by the damages awarded under Instruction No. 15.

In determining whether to award punitive damages, you should consider whether Upper Iowa's conduct was reprehensible.   In this regard, you may consider whether the harm suffered by Seabrooke was physical or economic or both; whether there was violence, deceit, intentional malice, reckless disregard for human health or safety; whether Upper Iowa's conduct that harmed Seabrooke also caused harm or posed a risk of harm

(CONTINUED...)

**FINAL INSTRUCTION NO.   16   (Cont'd)**

to others; and whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed Seabrooke.

If you decide to award punitive damages, you should consider the following in deciding the amount of punitive damages to award:

1.   how much harm Upper Iowa's wrongful conduct caused Seabrooke and could cause Seabrooke in the future; and

2.   what amount of punitive damages, in addition to the other damages already awarded, is needed, considering Upper Iowa's financial condition, to punish Upper Iowa for its wrongful conduct toward Seabrooke and to deter Upper Iowa and others from similar wrongful conduct in the future.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused to Seabrooke.

# FINAL INSTRUCTION NO. __17__

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

*First*, when you go to the jury room, you must select one of your members as your foreperson.  That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room.  You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

*Third*, if you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer, signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone - including me - how your votes stand numerically.

*Fourth*, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions.  The verdict must be unanimous.  Nothing I have said or done is intended to suggest what your verdict should be - that is entirely for you to decide.

(CONTINUED...)

**FINAL INSTRUCTION NO.   17   (Cont'd)**

*Finally*, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

DATED this   15th   day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA